# EXHIBIT G

 GOODWIN

Anthony S. Fiotto
+1 617 570 1324
afiotto@goodwinlaw.com

Goodwin Procter LLP
100 Northern Avenue
Boston, MA 02210

goodwinlaw.com
+1 617 570 1000

March 22, 2019

**VIA E-MAIL & U.S.P.S.**

Robert H. Lang
Thompson Coburn LLP
55 E. Monroe, 37th Floor
Chicago IL 60603

Re:   *VeroBlue Farms USA, Inc. v. Wulf, et al.*, Civil Action No. 18-cv-3047-LTS-MAR

Dear Mr. Lang:

This firm represents Canaccord Genuity LLC ("Canaccord") in connection with the subpoena (the "Subpoena") you purportedly caused to be served on Canaccord Genuity Group Inc. ("Canaccord Group") through CT Corporation System on March 13, 2019, in the matter referenced above (the "Action").  Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Canaccord hereby objects to the Subpoena and to the requested documents (the "Requests").

As an initial matter, Canaccord Group is a Canadian affiliate of Canaccord and is not subject to Rule 45; nor does it possess any documents described by the Requests.  To the extent you contend that purporting to serve Canaccord's Canadian affiliate imposes any obligations or is effective service on Canaccord (it does not and is not), the Subpoena is also improper in that it was served with slightly over a week for Canaccord to comply or object, which is improper as it "fails to allow a reasonable time to comply" under Rule 45 and New York law.

Further, as a non-party to the Action, Canaccord objects to the Requests on the basis that they are overly broad and unduly burdensome.  Canaccord also objects to the Requests to the extent that they are not reasonably calculated to lead to the discovery of admissible evidence.

Canaccord also objects to the Requests to the extent that they seek Canaccord's internal work product, drafts, internal communications and internal policies, procedures or guidelines.  Canaccord is an investment banking and research firm in the business of evaluating and analyzing companies.  The internal work it undertakes and the methodology it employs to do so are proprietary and confidential.  To require production of any of its internal work product would impermissibly require disclosure of Canaccord's confidential and competitively sensitive intellectual property, expert work product and other proprietary information.  Further, drafts and internal Canaccord work product and internal communications among Canaccord employees, as well as Canaccord's policies, procedures or guidelines, are completely irrelevant to any issue in dispute in the Action.

Exhibit G



Robert H. Lang
March 22, 2019
Page 2

Canaccord also objects to the Requests to the extent that they seek information which, if furnished, would violate any domestic or foreign judicial order, protective order, stipulation of confidentiality, or confidentiality agreement or restriction that exists with respect to such information.

Canaccord also objects to the Requests to the extent that they call for the production of confidential, proprietary, or commercially or competitively sensitive information.

Canaccord also objects to the Requests to the extent that they seek documents that are already in plaintiff's possession or are equally available to plaintiff from the actual parties to the Action or from public sources. At a minimum, plaintiff should first seek documents from the parties before burdening non-party Canaccord with the expense and effort of searching for materials readily obtainable from the parties.

Canaccord also objects to the Requests to the extent they call for electronic documents that are inaccessible because retrieval would involve undue cost and expense.

Canaccord also objects to the Requests to the extent that they are vague, ambiguous, or otherwise fail to state with the requisite particularity the documents requested.

Canaccord also objects to the Requests to the extent that they are unduly burdensome and overly broad.

Canaccord also objects to the Requests to the extent that they seek information that is protected from disclosure by the attorney-client privilege, the work product doctrine and/or any other applicable privilege or protection. Canaccord does not waive, and intends to preserve, any applicable privilege or protection.

Canaccord also objects to the Requests to the extent that they purport to impose any obligations upon Canaccord beyond those imposed by the Federal Rules of Civil Procedure.

Canaccord reserves the right to object on any ground at any time to any demand(s) for further responses to the Subpoena or any other requests for production or other discovery procedures. No response, objection or limitation, or lack thereof, made in this letter shall be deemed an admission or representation by Canaccord as to the existence or nonexistence of any document in the possession, custody, or control of Canaccord that is responsive to any Request. Moreover, all evidentiary objections shall be reserved, and no waiver of any objection is to be implied from any response or objection to the Subpoena.

Canaccord also reserves the right to seek appropriate compensation, including the costs and fees (including, without limitation, attorneys' fees and costs, and vendor costs) associated with or attendant to any production of documents or the doing of any other matter in response to the Subpoena. To that end, Canaccord notes that it is entitled to (and hereby demands) indemnification from plaintiff for any and all costs and expenses, including legal fees, in connection with responding to the Subpoena pursuant

 GOODWIN

Robert H. Lang
March 22, 2019
Page 3

to a letter agreement between Canaccord and plaintiff dated February 3, 2015 (a copy of which is enclosed).

Please do not hesitate to contact me if you wish to discuss this matter further.  Canaccord would be happy to discuss the possibility of producing a more narrowly defined category of documents.

Very truly yours,

Anthony S. Fiotto

Encl.

**CANACCORD** Genuity

350 Madison Avenue
New York, NY 10017
United States of America
www.canaccordgenuity.com

CONFIDENTIAL

February 3, 2015

VeroBlue Farms Inc.
1507 Capital Ave, Suite 101
Plano, Texas 75074
United States

Attention:    Leslie Wulf, Director, Chairman and CEO

Re:        Private Placement Engagement

This Private Placement Agreement (this "**Agreement**") will confirm the arrangements under which VeroBlue Farms Inc. and its present and future subsidiaries and any entity used thereby to facilitate the transactions contemplated hereby (collectively, the "Company" or "you") agree to engage Canaccord Genuity Inc. ("**Canaccord Genuity**," "**Canaccord**", the "**Agent**", "**we**" or "**us**") to act as set forth below in connection with one or more possible Transactions (as defined below).

1.  *Retention.* The Company hereby retains and authorizes Canaccord, during the term of this engagement, to act, together with National Bank of Canada ("NBC") as sole and exclusive placement agents, managers, bookrunners, underwriters and/or initial purchasers, as the case may be, in connection with the following (each, a "**Transaction**" or collectively "**Transactions**"):

    a)  The sale and/or placement, whether in one or more public or private transactions, of notes, bonds, debentures and/or other debt securities of the Company, including, without limitation, unitranche, mezzanine, convertible debt securities and/or asset-backed securities (individually and collectively, "**Debt Securities**"), and/or

    b)  subject to the provisions of paragraph 14, the arrangement and/or placement of any bank debt and/or other credit facility of the Company, including any unfunded commitment thereof or follow-on issuances (individually and collectively, "**Bank Debt**", and any or a combination of Bank Debt and/or Debt Securities, "**Debt Instruments**"), and/or

    c)  the sale and/or placement of securities in the form of debt structured equity, warrants, or similar instruments (individually and collectively, "**Structured Junior Securities**") and/or;.

    d)  the sale and/or placement of securities in the form of common stock or preferred stock (individually and collectively, "**Equity Securities**" and, together with Structured Junior Securities, "**Junior Securities**").

    For the avoidance of doubt, if a Transaction is executed in more than one issuance or tranche, each shall be deemed to be a Transaction for the purposes of this Agreement.



VeroBlue Farms Inc.
February 3, 2015

It is understood and agreed that the Company's engagement of Canaccord pursuant to this Agreement is not an express or implied commitment by, nor shall this Agreement otherwise create any obligation on, Canaccord to underwrite, place or purchase any instrument or otherwise provide or arrange any financing.

Canaccord Genuity acknowledges and agrees that the Company has engaged NBC to act as a placement agent or financial advisor with respect to Transactions pursuant to a separate engagement agreement.   The parties contemplate that Canaccord Genuity shall act as lead bookrunning placement agent for the placement of Debt Instruments and Structured Junior Securities, and NBC shall act as lead bookrunning placement agent for the placement of Equity Securities. Canaccord Genuity and NBC are referred to herein together as the "Co-Agents".

2. *Responsibilities.* We will provide you with such financial and market related advice and assistance as may be appropriate and mutually agreed to by you and the Co-Agents (and in any event at a standard reasonably expected from an investment bank of similar standing in the industry), including: assisting with the preparation of documentation necessary to complete the Transactions; assisting with the preparation of investor related materials and "roadshow" materials used to market the Transactions; and advising regarding suitable pricing, timing and deal size for the Transactions.

3. *Marketing.* It is expected that the Debt Instruments and Junior Securities will be offered and sold on a private placement basis as agreed upon by you and us by way of private placement to selected accredited investors and/or to qualified institutional buyers on a private placement or equivalent basis in accordance with applicable laws, as is mutually agreed between us and you.

You shall cause appropriate senior personnel of the Company to make themselves available to participate in the marketing of the Transactions, including assisting in the preparation of marketing materials and attending roadshows and other investor meetings. All orders and expressions of interest shall be referred to the Co-Agents.

The Company authorizes the Co-Agents to distribute to prospective investors in a Transaction a registration statement and prospectus or confidential offering, placement of information memorandum and other disclosure materials prepared or reviewed and approved by the Company for use in connection with a Transaction (for purposes of the immediately following sentence and the indemnification provisions, together with any reports, statements and other documents publicly filed by the Company with regulatory agencies, in each case, if applicable, the "Materials"), which Materials shall be the subject of the Co Agents' review and approval prior to distribution. The Company acknowledges that the Company shall be solely responsible for the accuracy and completeness of the Materials and all other information prepared or reviewed and approved by the Company that is distributed by the Co-Agents in connection with a Transaction, and agrees that such Materials and information shall not contain any untrue statement of material fact, or omit to state a material fact necessary to make the statements contained therein, in light of the circumstances in which they were made, not misleading. If, prior to the pricing of a Transaction, any event shall occur or condition shall exist as a result of which it is necessary to amend or supplement the Materials in order to make the statements therein, in the light of the circumstances in which they are made, not misleading, the Company shall promptly prepare and furnish to the Co-Agents such amendments or supplements. The Company shall comply, and shall provide reasonable assistance to Co-Agents in complying, with all federal, state, and provincial securities laws and regulations applicable to the Transaction.

The Company agrees that, with respect to a Transaction in the form of a direct private placement of Debt Instruments and/or Junior Securities (i) at the closing of the Transaction, it shall cause its outside counsel to issue to the Co-Agents an opinion acceptable to them, including, without

CANACCORD Genuity

limitation, an opinion of its legal advisor that any sale of the Debt Instruments was exempt from the registration requirements of the Securities Act of 1933, and (ii) the Co-Agents will be entitled to rely, as an express third-party beneficiary, on the representations, warranties and covenants of the Company and the investors in such Transaction that are set forth in the definitive agreement between the Company and the investors in such Transaction (such agreement or agreements, collectively, the "**Purchase Agreement**"). The Purchase Agreement shall be in form and substance reasonably satisfactory to Canaccord.

4. *Commission.* In exchange for Canaccord's services, the Company agrees to pay Canaccord a one-time cash fee equal to $100,000 ("**Retainer Fee**"), creditable towards the Success Fee (as defined below) payable to Canaccord, which Retainer Fee shall be payable promptly upon execution of this Agreement. In addition, the Company shall pay the Co-Agents the following fees, which shall be allocated between the Co-Agents, 50% to Canaccord Genuity and 50% to NBC:

   a) A cash fee, due and payable promptly upon closing of each Transaction, equal to the following ("**Success Fee**"):

      i.   4.00% of Gross Proceeds (as defined below) from any Debt Instruments placed, arranged, and/or underwritten in the Transaction; and/or

      ii.  5.00% of Gross Proceeds from any Structured Junior Securities placed, arranged, and/or underwritten in the Transaction; and/or

      iii. 7.00% of Gross Proceeds from any Equity Securities placed, arranged, and/or underwritten in the Transaction.

   For purposes hereof, the term "Gross Proceeds" shall mean the aggregate proceeds or commitments (whether or not funded at closing) received by the Company from any investor or investors at the closing (or closings) of the sale of Debt Instruments and Junior Securities.

5. *Material Changes.* You will promptly notify us, to the extent permitted by law, regulation or applicable rules, of (i) any material change, actual or contemplated, in the Company's affairs or in any information provided to the Agent concerning the Company, the Debt Instruments, the Junior Securities or the Transactions, (ii) any notice by any judicial or regulatory authority or any stock exchange requesting any information, meeting or hearing relating to the Company or the Transactions, or (iii) any other event or state of affairs that may be material to the Co-Agents or the security holders of any Debt Instruments or Junior Securities.

6. *Due Diligence.* You will make available to Canaccord Genuity, on a timely basis, all books and records including all corporate, financial, engineering, legal and operational information and documentation of the Company, and will provide access to all facilities, properties, employees, auditors, legal counsel, consultants or other experts, to permit Canaccord Genuity, their legal counsel and other advisers to conduct their due diligence investigation of the business and affairs of the Company and its subsidiaries, and will assist Canaccord Genuity in sourcing any other information useful and necessary to conducting such due diligence.

7. *Advertising.* The Company shall provide Canaccord Genuity and its counsel with the opportunity to review any press release or other public communication issued by the Company in connection with the Transactions and, at our request, include a reference to Canaccord Genuity and its role in any such release or communication, and shall ensure that any press release concerning the Transactions complies with applicable regulations.

**CANACCORD** Genuity

VeroBlue Farms Inc.
February 3, 2015

8. *Accuracy of Information.* In carrying out our responsibilities under this Agreement, we will necessarily rely on information prepared or supplied by you and other sources reasonably believed by us to be reliable and will apply reasonable standards of diligence to any work which we perform under this Agreement in the nature of an assessment or review of data or other information. However, we will be entitled to rely on, and assume no obligation to verify, the accuracy or completeness of such information and under no circumstances will we be liable to you for any damages arising out of the inaccuracy or incompleteness of any such information, except as required by law.

The Company hereby represents and warrants to Canaccord Genuity that all information and documentation concerning the Company, the Transactions, the Debt Instruments, and the Junior Securities that is provided by the Company in connection with this engagement will be accurate and complete and not misleading and will not omit to state any fact or information which would be material to a financial advisor and underwriter performing the services contemplated in this Agreement or to a prospective purchaser of the Debt Instruments and the Junior Securities. The Company will bear sole responsibility for the accuracy and completeness of any disclosure document used in connection with the Transactions.

9. *Expenses.* Whether or not the Transactions are completed, the Company shall be responsible for all reasonable expenses of the Transactions, including but not limited to: fees and disbursements of accountants and auditors, translators and other applicable experts; all costs and expenses related to roadshows and marketing activities, printing, filing, distribution, stock exchange approval and other regulatory compliance; other reasonable out-of-pocket expenses of the Co-Agent directly related to the Transactions (including, but not limited to, travel expenses in connection with due diligence and marketing activities, third party research and database services, and fees and disbursements of one law firm (in addition to any local law firms) to act as legal counsel to the Co-Agents), provided that the Company shall not be required to reimburse in excess of $25,000 in expenses incurred without the prior written consent of the Company (including via email); including sales or value added taxes payable in respect of any of the foregoing. All such fees, disbursements and expenses shall be payable by you promptly upon receiving an invoice therefor from the Co-Agents.

10. *Affiliates.* In performing its responsibilities under this Agreement, Canaccord Genuity may utilize the services of its Affiliates provided that it will be responsible for ensuring that such Affiliates comply with the terms of this Agreement and liable for any failure of such Affiliates to do so, subject to the provisions of Annex A hereto. For the purposes of this letter and Annex A hereto, an "Affiliate" of Canaccord Genuity is a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, Canaccord Genuity. For the purposes of this Agreement and the Indemnity (as defined below), the terms "Canaccord Genuity", "us", "we", "our" and like expressions will include such Affiliates.

11. *Representations and Warranties.* The Company represents and warrants to Canaccord Genuity, acknowledging that they are relying upon such representation and warranty, that:

   a) the Company will comply with all laws, regulations and policies, whether domestic, foreign, national, federal, provincial, state or otherwise, applicable to the Transactions and the offer and sale of the Instruments ("**applicable law**") and will retain, if required by us and subject to our reasonable approval, legal, accounting, tax and other applicable advisors or experts to work with us in effecting the Transaction;

   b) the Company has the requisite corporate power, authority and capacity to enter into and perform its respective obligations under this Agreement, and that it is not party to or

CANACCORD Genuity

VeroBlue Farms Inc.
February 3, 2015

> otherwise bound by any instrument or agreement which restricts or otherwise conflicts with the performance by the Company of its obligations under this Agreement; and

c) immediately following the acceptance of this Agreement by the Company, the Company will use reasonable efforts to obtain all other necessary regulatory and other consents and approvals required in connection with the Transaction.

12. *Indemnification and Contribution.* In consideration of and as a condition precedent to Canaccord Genuity undertaking the engagement contemplated by this letter, the Company agrees to the indemnification provisions and other matters set forth in <u>Annex A</u>, which is incorporated by reference into this Agreement.

13. *Term and Termination.* Canaccord Genuity's engagement hereunder will commence upon the execution of this Agreement by both the Company and Canaccord Genuity, and will continue until terminated by either party for any reason on ten days written notice to the other (the "Term"). Upon any termination of this Agreement, the rights and obligations of the parties hereunder shall terminate, except that the obligations set forth in paragraphs 4 Commission, 9 Expenses, 12 Indemnification and Contribution, 13 Term and Termination, 15 Miscellaneous Terms and in Annex "A" to this Agreement, shall survive any termination of this Agreement, and Canaccord Genuity shall be entitled to the applicable fee or fees set forth in paragraph 4 Commission, if, on or prior to the expiration of the Covered Period (as defined below), the Company consummates, or enters into an agreement that subsequently results in, a Transaction with a Covered Person (as defined below). Any such fee or fees shall be payable upon the closing of any such Transaction.

For purposes of this Agreement (i) the "Covered Period" shall mean the period commencing on the date hereof and ending 12 months from the effective date of termination of this Agreement, and (ii) a "Covered Person" shall mean any third party (A) contacted by either of the Co-Agents for a potential Transaction during the Term, (B) sought by either of the Co-Agents to be so contacted during the Term, but not permitted by the Company to be so contacted, or (C) that contacts the Company or any officer, director, or other affiliate of the Company during the Term for a potential Transaction, except, in the case of each of clauses (A), (B) and (C) for FFG Banks (as defined below), which shall not be Covered Persons. The Company represents and warrants to the Co-Agents that it has provided to them a list of all third parties that have contacted the Company or any officer, director, or other affiliate of the Company for a Transaction prior to the date hereof, and agrees that it will promptly notify the Co-Agents of any such contact during the Term.

14. *Exclusivity.* During the Term, the Company agrees that it will not, directly or indirectly, offer to sell or borrow any Debt Instruments or Junior Securities, solicit an offer to purchase or lend any Debt Instruments or Junior Securities, or otherwise contact or enter into a discussion with any other party in connection with the structuring, issuance, sale, arrangement, placement, lender or purchase of Debt Instruments or Junior Securities, other than through Canaccord Genuity and NBC, pursuant to the terms of this Agreement and the separate engagement of NBC. The Company and its directors, officers and employees may at any time and without prior notice to the Agent or any other limitations arrange or place any Bank Debt guaranteed by or under the Federal Farm Guarantee Program with banks located in Iowa and associated with such Bank Debt (each an "FFG Bank"). Subject to the foregoing, during the term of this Agreement, the Company will not, and will not permit any advisor or representative of the Company to, engage any other party to perform any services or act in any capacity for which Canaccord Genuity has been engaged pursuant to this Agreement with respect to any potential Transaction without the prior written approval of Canaccord Genuity. Notwithstanding the foregoing, the Company may issue securities (i) as consideration in the acquisition of third party businesses or in business combinations or other strategic transactions with third parties not involving the sale of securities for cash, (ii) to consultants, advisors, employees and directors for services rendered or to be rendered to the Company.

**CANACCORD** Genuity

VeroBlue Farms Inc.
February 3, 2015

15. *Miscellaneous Terms.*

a) The Company confirms that it will rely on its own counsel and accountants for legal and accounting advice. The Company acknowledges and agrees that Canaccord Genuity has been retained to act solely as set out in paragraph 1 Retention. In such capacity, Canaccord Genuity shall act as an independent contractor, and any duties of Canaccord Genuity arising out of the engagement pursuant to this Agreement shall be owed solely to the Company. Nothing in this Agreement shall be deemed to create a fiduciary relationship between Canaccord Genuity and the Company or its security holders. Neither this engagement, nor the delivery of any advice in connection with this engagement, is intended to confer rights upon any persons not a party hereto (including, without limitation, security holders, employees and creditors of the Company) as against Canaccord Genuity or its Affiliates or their respective directors, officers, agents and employees.

b) This Agreement, including all schedules to this Agreement, constitutes the entire agreement between the parties relating to its subject matter and supersedes all prior agreements, understandings, negotiations and discussions, whether oral or written, of the Parties with respect to such subject matter. This Agreement may only be amended, supplemented, or otherwise modified by written agreement signed by all of the parties.

c) This Agreement, including Annex A, will inure to the benefit of and be binding upon the respective successors and assigns of the parties to this Agreement and of the Indemnified Persons (as defined in Annex A), provided that no party may assign this Agreement or any rights or obligations under this Agreement, in whole or in part, without the prior written consent of every other party.

d) No waiver of any of provision of this Agreement will constitute a waiver of any other provision (whether or not similar). No waiver will be binding unless executed in writing by the party to be bound by the waiver. A party's failure or delay in exercising any right under this Agreement will not operate as a waiver of that right. A single or partial exercise of any right will not preclude a party from any other or further exercise of that right or the exercise of any other right it may have.

e) If any provision of this Agreement is determined to be illegal, invalid or unenforceable by an arbitrator or any court of competent jurisdiction from which no appeal exists or is taken, that provision will be severed from this Agreement and the remaining provisions will remain in full force and effect.

16. *Execution in Counterparts.* This Agreement may be executed in any number of counterparts, each of which is deemed to be an original, and such counterparts together constitute one and the same instrument.  Transmission of an executed signature page by facsimile, email or other electronic means is as effective as a manually executed counterpart of this Agreement.

VeroBlue Farms Inc.
February 3, 2015

If the foregoing is in accordance with your understanding, please indicate your agreement to the above terms and conditions by signing the enclosed copy of this Agreement and returning the same to us.

Yours very truly,

**CANACCORD GENUITY INC.**

By: _____
        Stephen Lobb
        Senior Managing Director, Investment Banking

**AGREED AND ACCEPTED** as of the date first written above.

**VEROBLUE FARMS, INC.**

By: _____
        Leslie Wulf
        Director, Chairman and CEO

VeroBlue Farms Inc.
February 3, 2015

ANNEX A

Terms defined in the letter agreement to which this Annex A is attached shall have the same meaning in tis Annex unless otherwise defined.

In the event that Canaccord Genuity Inc. or any of its Affiliates ("Canaccord Genuity"), the respective shareholders, directors, officers, agents or employees of Canaccord Genuity, or any other person controlling Canaccord Genuity (collectively, together with Canaccord Genuity, "Indemnified Persons") becomes involved in any capacity in any action, claim, suit, investigation or proceeding, actual or threatened, brought by or against any person, including stockholders of VeroBlue Farms Inc. (the "Company"), in connection with or as a result of (i) the engagement contemplated by the letter agreement to which this Annex A is attached (the "engagement"), or (ii) any untrue statement or alleged untrue statement of a material fact contained in any Materials, or any omission or alleged omission to state therein a material fact necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading, the Company will reimburse (subject to receipt of evidence of payment) such Indemnified Person for its legal and other expenses (including without limitation the costs and expenses incurred in connection with investigating, preparing for and responding to third party subpoenas or enforcing the engagement) incurred in connection therewith as such expenses are incurred; provided, however, that with respect to clause (i) above if it is finally determined by a court or arbitral tribunal in any such action, claim, suit, investigation or proceeding that any loss, claim damage or liability of Canaccord Genuity or any other Indemnified Person has resulted primarily and directly from the gross negligence, wilful misconduct, or fraud of Canaccord Genuity in performing the services that are the subject of the engagement, then from and after such finding the Company shall not be obliged to so reimburse Canaccord Genuity and to the extent such reimbursement has occurred Canaccord Genuity will repay such portion of reimbursed amounts that is attributable to expenses incurred in relation to the act or omission of Canaccord Genuity which is the subject of such determination. The Company will also indemnify and hold harmless each Indemnified Person from and against any losses, claims, damages or liabilities (including actions or proceedings in respect thereof) (collectively, "Losses") related to or arising out of (i) the engagement, or (ii) any untrue statement or alleged untrue statement of a material fact contained in the Materials, or any omission or alleged omission to state therein a material fact necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading, except, with respect to clause (i) above, to the extent any such Losses are finally determined by a court or arbitral tribunal to have resulted primarily and directly from the wilful misconduct, gross negligence or fraud of Canaccord Genuity in performing the services that are the subject of the engagement.

If such indemnification is for any reason not available or insufficient to hold an Indemnified Person harmless (except by reason of the gross negligence, wilful misconduct or fraud of Canaccord Genuity as described above), the Company and Canaccord Genuity shall contribute to the Losses involved in such proportion as is appropriate to reflect the relative benefits received (or anticipated to be received) by the Company, on the one hand, and by Canaccord Genuity, on the other hand, with respect to the engagement or, if such allocation is determined by a court or arbitral tribunal to be unavailable, in such proportion as is appropriate to reflect other equitable considerations such as the relative fault of the Company on the one hand and of Canaccord Genuity on the other hand; provided, however, that in no event shall the amounts to be contributed by Canaccord Genuity exceed the fees actually received by Canaccord Genuity in the engagement. Relative benefits to the Company, on the one hand, and Canaccord Genuity, on the other hand, shall be deemed to be in the same proportion as (i) the total value paid or proposed to be paid or received or proposed to be received by the Company or its security holders, as the case may be, pursuant to the Transaction(s), whether or not consummated, contemplated by the engagement, bears to (ii) all fees actually received by Canaccord Genuity in the engagement.

The Company also agrees that neither Canaccord Genuity nor any other Indemnified Person shall have any liability to the Company or any person asserting claims on behalf or in right of the Company in connection

CANACCORD Genuity

VeroBlue Farms Inc.
February 3, 2015

with or as a result of the engagement or any matter referred to in the engagement, except to the extent that any Losses incurred by the Company are finally determined by a court or arbitral tribunal to have resulted primarily and directly from the willful misconduct, gross negligence or fraud of Canaccord Genuity in performing the services that are the subject of the engagement. In no event shall Canaccord Genuity or any other Indemnified Person be responsible for any indirect, special or consequential damages, even if advised of the possibility thereof.

In the event that an Indemnified Person is requested or required to appear as a witness in any action brought by or on behalf of or against the Company relating to the engagement in which such Indemnified Person is not named as a defendant, the Company agrees to promptly reimburse (subject to receipt of evidence of payment or expense) Canaccord Genuity on a monthly basis for all expenses incurred by it in connection with such Indemnified Person's appearing and preparing to appear as such a witness, including, without limitation, the reasonable fees and disbursements of its legal counsel.

The Company's obligations hereunder shall be in addition to any rights that any Indemnified Person may have at common law or otherwise. The letter to which this Annex A is attached, including this Annex A, and any other agreements relating to the engagement shall be governed by and construed in accordance with the laws of the State of New York, applicable to contracts made and to be performed therein and, in connection therewith, the parties hereto consent to the exclusive jurisdiction and venue of the state and federal courts of the State of New York, located in Manhattan. Notwithstanding the foregoing, solely for purposes of enforcing the Company's obligations hereunder, the Company consents to personal jurisdiction, service and venue in any court proceeding in which any claim subject to this Annex A is brought by or against any Indemnified Person. CANACCORD GENUITY HEREBY AGREES, AND THE COMPANY HEREBY AGREES ON ITS OWN BEHALF AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ON BEHALF OF ITS SECURITY HOLDERS, TO WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM, COUNTER-CLAIM OR ACTION ARISING OUT OF THE ENGAGEMENT OR CANACCORD GENUITY'S PERFORMANCE OF SERVICES THAT ARE THE SUBJECT THEREOF.

The provisions of this Annex A shall apply to the engagement and any modification thereof and shall remain in full force and effect regardless of the completion or termination of the engagement. If any term, provision, covenant or restriction herein is held by a court of competent jurisdiction to be invalid, void or unenforceable or against public policy, the remainder of the terms, provisions and restrictions contained herein shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

CANACCORD Genuity